UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        x
IN RE MARSH ERISA LITIGATION            x       Master File No.
                                        x       04 Civ. 8157 (SWK)
----------------------------------------X
                                        x
THIS DOCUMENT RELATES TO:               x       **OPINION AND ORDER**
ALL ACTIONS                             x
                                        x
----------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

In October 2004, the Office of the New York State Attorney General (the "NYAG") filed a civil action alleging that Marsh & McLennan Companies, Inc. ("MMC") and its insurance brokerage subsidiary, Marsh, Inc. ("Marsh"), engaged in fraudulent business practices. The announcement of that lawsuit led to a precipitous decline in the value of MMC stock. This litigation followed shortly thereafter. The plaintiffs here, participants in the Marsh & McLennan Companies Stock Investment Plan (the "Plan"), allege that the Plan's fiduciaries violated the Employee Retirement Income Security Act of 1974 ("ERISA") by breaching their fiduciary duties to the Plan during the period spanning July 1, 2000, to January 31, 2005 (the "Class Period"). Several defendants have now filed motions to dismiss certain portions of the Consolidated Class Action Complaint (the "Complaint"). For the reasons set forth below, these motions to dismiss are granted in part and denied in part.

## I.   BACKGROUND

On October 14, 2004, the NYAG filed suit against MMC and Marsh in the Supreme Court of New York. The NYAG alleged that the corporation and its subsidiary had defrauded their clients-- entities seeking insurance coverage--by steering business to select third-party insurance providers for the sole purpose of maximizing their receipt of contingent commissions from those providers. (Compl. ¶¶ 90, 97, 114-16.) At their most egregious, these practices took the form of bid-rigging, whereby Marsh would allegedly steer a client's business to a preordained insurance provider by persuading other insurance providers to place above-market bids for that business. (Compl. ¶¶ 117-22.) MMC ultimately settled the NYAG lawsuit for $850 million (Compl. ¶ 92), but not before shares of MMC stock fell 38% and "erased millions of dollars in retirement savings" (Comp. ¶ 130). While MMC and Marsh were allegedly engaged in these fraudulent business practices, the Plan continued to invest heavily in MMC stock throughout the Class Period, despite the fact that Plan fiduciaries were allegedly aware of the fraudulent business practices and failed to communicate the potential risks of investment in MMC stock to Plan participants or to alter their investment strategy.

The named plaintiffs, Donald Hundley, Conrad Simon, and Leticia Hernandez ("Plaintiffs"), all of whom are participants

in the Plan (Compl. ¶¶ 12-14), brought the instant lawsuit pursuant to ERISA sections 409 and 502 "in a representative capacity for losses suffered by the Plan as a result of breaches of fiduciary duty" (Compl. ¶ 7). Plaintiffs seek damages for "losses to the Plan for which Defendants are personally liable" and "other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, equitable tracing, and other monetary relief." (Compl. ¶ 6.)

Plaintiffs name several classes of defendants, including MMC, its CEO, Jeffrey Greenberg ("Greenberg"), its Board of Directors (the "Director Defendants"), and three committees--the Investment Committee, the Administrative Committee, and the Oversight Committee--comprised of various directors and officers of MMC and Marsh (collectively, "Defendants"). (Compl. ¶¶ 15-31.) Each class of defendants, and each individual within those classes, is alleged to have been a Plan fiduciary during the Class Period and to have breached various fiduciary duties to the Plan under ERISA section 409.

The Complaint alleges five separate counts against the various classes of defendants. Count I alleges a breach of fiduciary duty against MMC, the Director Defendants, and the Investment Committee for failure to prudently and loyally manage the Plan and its assets (the "Prudence Claim"). (Compl. ¶¶ 164-

3

82.) Count II alleges a breach of fiduciary duty against the Investment Committee and the Administrative Committee (together, the "Communications Defendants") for failure to provide complete and accurate information to participants and beneficiaries. (Compl. ¶¶ 183-97.) Count III alleges a breach of fiduciary duty against Greenberg, the Director Defendants, and the Oversight Committee (together, the "Monitoring Defendants") for failure to monitor the performance of other fiduciaries. (Compl. ¶¶ 198-207.) Count IV alleges co-fiduciary liability against MMC, Greenberg, Sandra S. Wijnberg, William L. Rosoff, the Communications Defendants, and the Monitoring Defendants. (Compl. ¶¶ 208-20.) Finally, "[t]o the extent that MMC is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA," Count V alleges that MMC knowingly participated in a breach of fiduciary duty. (Compl. ¶¶ 221-24.)

## II.  DISCUSSION

In three separate motions, Defendants seek to dismiss the Complaint on several grounds and against various defendants.[1] The Court first lays out the general legal standards applicable to

---

[1] MMC filed a motion seeking to dismiss several claims in their entirety and others as against particular classes of defendants. Lawrence Lasser, who is a defendant solely in his capacity as an MMC director, filed a motion joining MMC's position to the extent that it pertains to the Director Defendants. Finally, Greenberg filed his own motion, seeking the dismissal of all claims against him.

these motions. The Court then considers two issues which span multiple counts of the Complaint: the applicability of Federal Rule of Civil Procedure 23.1 to representative claims brought pursuant to ERISA section 502(a)(2); and the ability of Plaintiffs to state claims for equitable relief under ERISA section 502(a)(3). Finally, the Court addresses arguments challenging each of the substantive counts of the Complaint.

### A. Legal Standards for Pleading ERISA Fiduciary Duty Claims Under Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are assumed to be true and all reasonable inferences are drawn in the plaintiff's favor. Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005) (citing E.E.O.C. v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000)). At the motion-to-dismiss stage, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." Id. (citing Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). Thus, dismissal is "appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Furthermore, fiduciary duty claims brought under ERISA are subject only to the "simplified pleading standard" of Federal Rule of Civil Procedure 8(a) rather than the heightened pleading standard of Federal Rule of Civil Procedure 9(b). In re Worldcom, Inc., 263 F. Supp. 2d 745, 756 (S.D.N.Y. 2003) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002)); accord In re Polaroid ERISA Litig. (In re Polaroid I), 362 F. Supp. 2d 461, 469-71 (S.D.N.Y. 2005). Thus, to survive this motion to dismiss, the Complaint must include only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

**B. The Applicability of Rule 23.1 to Section 502(a)(2) Claims**

Defendant Greenberg argues that plaintiffs seeking relief under section 502(a)(2) must make a demand pursuant to Federal Rule of Civil Procedure 23.1. Although this argument is only advanced by Greenberg, the Court notes that if it were valid, it would require dismissal in favor of all defendants to the extent that the Complaint is premised on section 502(a)(2). However, the weight of authority in this Circuit belies Greenberg's argument.

The Second Circuit recently stated that "[t]here is significant doubt as to whether under section 502(a)(2) of ERISA plaintiffs are required to follow Rule 23.1," and recognized that section 502(a)(2) suits are "not controlled by Diduck," the

primary authority upon which Greenberg relies. <u>Coan v. Kaufman</u>, 457 F.3d 250, 257-58 (2d Cir. 2006) (discussing <u>Diduck v. Kaszycki & Sons Contractors, Inc.</u>, 974 F.2d 270 (2d Cir. 1992)). Although <u>Coan</u> does not explicitly hold that plaintiffs bringing suit under section 502(a)(2) are exempt from Rule 23.1, the opinion offers considerable support for that proposition by noting that section 502(a)(2) "provides an express right of action for [a plan's] participants," and by refusing to affirm the district court's contrary conclusion. <u>Id.</u> at 258. Consequently, the Court concurs with the conclusion of <u>In re Polaroid ERISA Litig.</u> (<u>In re Polaroid II</u>), No. 03 Civ. 8335(WHP), 2006 WL 2792202 (S.D.N.Y. Sept. 29, 2006), that "Plaintiffs were under no obligation to comply with Rule 23.1 in this action." <u>Id.</u> at *6. Greenberg's motion to dismiss is denied on this ground.

## C. The Scope of Equitable Relief Under Section 502(a)(3)

MMC joins Greenberg in arguing that Plaintiffs' request for relief goes beyond the scope of ERISA section 502(a)(3).[2] First, they argue that section 502(a)(3) limits plaintiffs to requests for appropriate forms of equitable relief, and prohibits

---

[2] ERISA section 502(a)(3) provides in relevant part that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief . . . ." 29 U.S.C. § 1132(a)(3).

monetary relief unless the plaintiffs can identify specific funds or property in the defendant's possession. As this lawsuit concerns contributions to a common stock fund, Defendants argue that Plaintiffs are incapable of identifying such specific property, and thus Plaintiffs' request for a constructive trust, restitution, or other monetary relief is not available under section 502(a)(3). Second, Defendants contend that Plaintiffs' request for injunctive relief to prevent them from committing "any further violations of their ERISA fiduciary obligations" (Compl. 74, ¶ E) is improperly vague.

The Second Circuit has recently considered the available scope of equitable claims for monetary relief under section 502(a)(3). In Coan, after considering the Supreme Court's decisions in Mertens v. Hewitt Assocs., 508 U.S. 248 (1993), and Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), the Second Circuit upheld the district court's denial of a plaintiff's claims for monetary relief that could not be recovered from a specifically identified fund. Coan, 457 F.3d at 262-64. In addition, the court held that "an injunction requiring the defendants to restore funds to the . . . 401(k) plan to be distributed to . . . participants, 'does not transform what is effectively a money damages request into equitable relief.'" Id. at 264 (quoting Coan v. Kaufman, 333 F. Supp. 2d 14, 26 (D. Conn. 2004)); accord Mertens, 508 U.S. at

255-58 (compensatory damages by another name are not "equitable relief" within the meaning of section 502(a)(3)).

The equitable relief requested by Plaintiffs is not substantially different from that requested in <u>Coan</u>. Plaintiffs' request for the recovery of damages allegedly suffered by the Plan on its investment in MMC stock (Compl. 74, ¶ C) is clearly inappropriate under section 502(a)(3), as legal damages are simply not available under this expressly equitable remedial provision. The requests for a constructive trust, restitution, or equitable tracing are no more successful. Ultimately, Plan participants invested funds in the Plan, which were then partially matched in cash by MMC in a proportion corresponding to each participant's status within the Plan. Plaintiffs now seek recovery from this common fund, which was nourished by cash investments from numerous entities. Investments of this nature do not create the sort of specifically identified fund contemplated by the Second Circuit in <u>Coan</u>. <u>Cf.</u> <u>Nechis</u>, 421 F.3d at 103 (declining to permit "equitable" monetary relief in an action seeking to recoup health care coverage premiums because the defendant was "under no obligation to segregate" those funds, and the plaintiff did "not allege [the funds] to be segregated in a separate account"). It is clear that Plaintiffs merely "attempt to cast this action as one for 'equitable relief'" in order to maximize their opportunities for a monetary

recovery. <u>Coan</u>, 457 F.3d at 264. Because Plaintiffs are unable to allege the existence of a specifically identified fund in which their investments are held, their claims for monetary relief under section 502(a)(3) must fail.

With reference to Plaintiffs' request for an order enjoining Defendants "from any further violations of their ERISA fiduciary obligations" (Compl. 74, ¶ E.), Defendants are correct to note that an injunction framed in such general terms would be inappropriate. <u>See, e.g.</u>, <u>Peregrine Myanmar Ltd. v. Segal</u>, 89 F.3d 41, 51 (2d Cir. 1996) (Under Federal Rule of Civil Procedure 65(d), "an injunction must be more specific than a simple command that the defendant obey the law.") (citations omitted). However, at the pleading stage, the Court will not foreclose the later possibility of more narrowly tailored injunctive relief. Plaintiffs have met the pleading requirements of Federal Rule of Civil Procedure 8(a) by giving Defendants sufficient notice that they seek injunctive relief pertaining to the allegations of the Complaint.

**D. The Prudence Claim (Count I)**

Defendants challenge the fiduciary status of certain classes of defendants named in Count I and in other counts of the Complaint. <u>See</u> <u>infra</u> Parts II.E.3 & II.F. ERISA expressly contemplates two methods of pleading a party's fiduciary status: (1) by identifying that party as a named fiduciary, who is

explicitly designated as a fiduciary in plan documents; and (2) by identifying that party as a de facto fiduciary, who has or performs discretionary fiduciary responsibility with respect to a plan. 29 U.S.C. §§ 1102(a) & 1002(21)(A); see also In re Polaroid I, 362 F. Supp. 2d at 472 ("An individual may be a fiduciary for ERISA purposes either because the plan documents explicitly describe fiduciary responsibilities or because that person functions as a fiduciary."). Thus, ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." Mertens, 508 U.S. at 262 (citing 29 U.S.C. § 1002(21)(A)).

Fiduciary status, however, does not attach for all purposes. Rather, an individual is assigned fiduciary status "only to the extent that he has or exercises the described authority or responsibility." Flanigan v. Gen. Elec. Co., 242 F.3d 78, 87 (2d Cir. 2001) (citation and internal quotations marks omitted); accord Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214, 217 (8th Cir. 1993); Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992). Thus, when considering the fiduciary status of the various defendants listed in a complaint, the court must not only consider the plan documents and general allegations of fiduciary responsibility, but the particular context in which a fiduciary is named or a defendant is alleged to exercise discretionary responsibility.

In their challenge to the Prudence Claim, Defendants argue that MMC and the Director Defendants were not ERISA fiduciaries with respect to the management and investment of the Plan, and thus Count I against those defendants must be dismissed. While conceding that MMC and the Director Defendants are not named fiduciaries for the Plan's management and investment, Plaintiffs argue that they have properly alleged that those defendants are de facto fiduciaries for management and investment of the Plan's assets.

Plaintiffs allege that MMC "became a de facto fiduciary of the Plan by in fact exercising discretionary authority and control over its administration and the investment and disposition of its assets." (Compl. ¶¶ 60, 61.) Courts throughout this Circuit have concluded that similar allegations tracking ERISA's statutory language are sufficient at the pleading stage. See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 241 (2d Cir. 2002); In re Polaroid I, 362 F. Supp. 2d at 470, 473; In re Worldcom, 263 F. Supp. 2d at 759. Likewise, Plaintiffs' allegations are sufficient to survive MMC's motion to dismiss the Prudence Claim against it. This conclusion is not undermined by the Complaint's inclusion of more specific allegations of MMC's fiduciary status, which on their own might prove insufficient to plead a defendant's fiduciary status. See In re Polaroid I, 362 F. Supp. 2d at 473; In re AOL Time Warner,

Inc. Sec. & "ERISA" Litig., No. MDL 1500, 02 Civ. 8853(SWK), 2005 WL 563166, at *4 & nn.4-5 (S.D.N.Y. Mar. 10, 2005); In re Worldcom, 263 F. Supp. 2d at 759-60.

MMC argues that if the Court were to accept the Complaint's skeletal allegations of MMC's fiduciary status, all employers would be liable for the fiduciary acts and omissions of their employees. This argument ignores both the substance of Plaintiffs' allegations and the procedural posture of this case. In the first place, Plaintiffs do not allege that MMC is liable for the actions of its employees, but that MMC *itself* exercised authority over the Plan. Further, failing to dismiss these claims against MMC at this time does not compel the conclusion that an employer is automatically liable under ERISA for the fiduciary acts of its employees; it merely recognizes that the plaintiffs here have sufficiently alleged that MMC was a de facto fiduciary for investment decisions "to allow discovery to proceed." In re Polaroid I, 362 F. Supp. 2d at 473 (citing In re Worldcom, 263 F. Supp. 2d at 759). Of course, if Plaintiffs cannot supplement their allegations after the benefit of discovery, summary judgment for MMC will be appropriate on these grounds. Nonetheless, at this stage, Plaintiffs have sufficiently alleged MMC's fiduciary status to survive the motion to dismiss Count I against that defendant.

Plaintiffs also allege that the Director Defendants "exercised authority or control respecting management or disposition of the Plan's assets." (Compl. ¶ 70.) As with Plaintiffs' general allegations against MMC, the Complaint provides allegations against the Director Defendants which track the statutory language of ERISA. These allegations are sufficient at the pleading stage. The merit of these allegations will be considered at a later stage of the litigation.

### E. The Communications Claim (Count II)

Defendants raise several challenges to Plaintiffs' claim for breach of fiduciary duty against the Investment Committee and Administrative Committee for failure to communicate complete and accurate information to participants and beneficiaries of the Plan. Defendants argue that these claims may not be asserted under section 502(a)(2) because they are individual in nature, and that they may not be brought under section 502(a)(3) because Plaintiffs seek improper monetary relief. Additionally, Defendants argue that the Investment Committee did not have a fiduciary duty to communicate with Plan participants.

#### 1. Communications Claim Is Proper Under Section 502(a)(2)

ERISA section 502(a)(2) provides that participants or beneficiaries of a plan may bring an action for relief under ERISA section 409. 29 U.S.C. § 1132(a)(2). Section 409 indicates that a fiduciary who breaches any of his duties "shall be

14

personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). These provisions make clear that, while an individual participant or beneficiary may bring suit for a breach of fiduciary duty, such a suit is only proper to the extent that it seeks to recover losses sustained by "the plan as a whole." Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985). Based on these and other authorities, Defendants argue that Plaintiffs may not recover on the communications claim because this variety of claim is individual in nature and cannot possibly be brought on behalf of the Plan as a whole.

Putting aside Defendants' narrower argument as to why communications claims per se do not benefit a plan as a whole, the weight of authority indicates that a claim may be brought on behalf of a plan as a whole even if it will not benefit every plan participant. A number of courts have held that, while individual relief is not proper under section 502(a)(2), the provision does not prohibit actions brought by individuals on behalf of the plan that may only benefit a subclass of the plan. See In re Polaroid II, 2006 WL 2792202, at *5-*6 (citing LaRue v. DeWolff, Boberg & Assocs., Inc., 458 F.3d 359, 363 (4th Cir. 2006); Milofsky v. Am. Airlines, Inc., 442 F.3d 311, 313 (5th Cir. 2006) (per curiam); In re Schering-Plough Corp. ERISA Litig., 420 F.3d 231, 234-35 (3d Cir. 2005); Kuper v. Iovenko,

66 F.3d 1447, 1453 (6th Cir. 1995)). But see Fisher v. J.P. Morgan Chase & Co., No. 03 Civ. 3252(SHS), 2006 WL 2819606, at *4 (S.D.N.Y. Sept. 29, 2006) (declining to reconsider its earlier decision at the class certification stage that the plaintiffs--plan participants seeking relief on behalf of a subclass of participants--lacked standing to bring claims under section 502(a)(2)).

The key consideration in each of these cases was whether the desired recovery inured to the benefit of the plan or was explicitly directed towards individuals, rather than whether every single plan participant would ultimately recover. With the exception of Fisher, each of these opinions emphasized the nature of the relief requested, rather than attempting to look past the plan's organizational structure, which serves as a proxy for its participants and beneficiaries, in order to reveal the ultimate destination of the recovery. That is because ERISA section 502 specifically empowers certain persons, including participants like the plaintiffs here, to bring suit under section 409 to seek recovery on behalf of the plan. It is of no consequence that, in the final reckoning, Plan members will benefit from the recovery, because it is taken for granted that an ERISA-covered plan ultimately serves individuals. This is no reason to deprive plan participants of remedies that are explicitly provided by section 502(a)(2).

In fact, breach of fiduciary duty claims based on misrepresentation have long been recognized as remediable by way of section 502(a)(2). <u>See, e.g.</u>, <u>Russell</u>, 473 U.S. at 142 (recognizing that fiduciary breaches, including those related to "the disclosure of specified information," are secured by "remedies that would protect the entire plan"); <u>In re Polaroid I</u>, 362 F. Supp. 2d at 478; <u>In re Worldcom</u>, 263 F. Supp. 2d at 765-66. Further, other courts have explicitly and persuasively rejected the contention that, because misrepresentation claims require individual reliance, they can not possibly inure to the benefit of the plan as a whole. <u>See In re Schering-Plough</u>, 420 F.3d at 235-36 ("[T]he fact that Plaintiffs may have to show individual reliance on the defendants' alleged misrepresentations to prevail on some claims does not mean they do not seek recovery for Plan losses."). Consequently, the Court declines to dismiss Count II of the Complaint to the extent that it seeks recovery for the Plan under section 502(a)(2).

**2. Communications Claim Is Improper Under Section 502(a)(3)**

Although the communications claim may be brought on behalf of the Plan under section 502(a)(2), Defendants are correct to note that this claim is not properly brought under section 502(a)(3) inasmuch as it seeks monetary relief that may not be recovered from a specifically identified fund. <u>See</u> <u>supra</u> Part

II.C. Thus, Count II is dismissed insofar as it seeks monetary relief under section 502(a)(3).

### 3. The Investment Committee's Fiduciary Status for Communications

The Court has already recognized that general allegations tracking ERISA's language are sufficient to plead a defendant's fiduciary status. See supra Part II.D. For this reason, Plaintiffs properly allege that the Investment Committee was a fiduciary for the purpose of communicating with Plan participants.

Plaintiffs concede that the Investment Committee was not a named fiduciary for the purpose of communications. However, they claim that the Investment Committee was a de facto fiduciary because it had a "responsibility to provide complete and accurate information" to the Plan's participants (Compl. ¶ 75). The possession of discretionary responsibility, even without proof that such responsibility was exercised, provides sufficient ground for a finding of fiduciary status under ERISA. See 29 U.S.C. § 1002(21)(A)(iii) (indicating that a person may be a plan fiduciary to the extent that "he has any discretionary authority or discretionary responsibility in the administration of such plan"). Accordingly, under the liberal pleading standard of Federal Rule of Civil Procedure 8(a), Plaintiffs have adequately alleged that the Investment Committee was a fiduciary

for the purpose of Plan communications. As a result, the Court will not dismiss Count II against the Investment Committee.

**F. The Monitoring Claim (Count III)**

Defendants also argue that Plaintiffs have failed to allege that the Director Defendants were fiduciaries for the purpose of monitoring. Instead of directly rebutting the Complaint's allegations that the Director Defendants had duties "to review the reports of the Administrative and Investment Committees" (Compl. ¶ 68) and "to oversee the Oversight Committee" (Compl. ¶¶ 69, 86), the defendants seize on Plaintiffs' allegations that the Director Defendants delegated their appointment and removal powers to the CEO. Even if these delegations absolve the Director Defendants of liability for their delegates' exercise of those powers, however, the Complaint separately alleges that those defendants had an express duty to review and oversee the Administrative, Investment, and Oversight Committees, each of which is recognized as a fiduciary by the Defendants. Consequently, the allegations of the Complaint sufficiently put the Director Defendants on notice of the monitoring claim against them. The Court declines to dismiss Count III against those defendants.

**G. The Co-Fiduciary Liability Claim (Count IV)**

Because the Complaint includes sufficient allegations that MMC and the Director Defendants are fiduciaries for either

investment or monitoring, the co-fiduciary liability claims have also been properly alleged against those defendants. Accordingly, the Court has no basis for dismissing Count IV against any of the defendants.

### H. The Knowing Participation Claim (Count V)

Defendant MMC also challenges the fifth and final count of the Complaint. Count V alleges that, to the extent that the Court were to find that MMC is not a fiduciary, "MMC knowingly participated in the breaches of those Defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief as a result of participating in such breaches." (Compl. ¶ 223.) Although the Court has already determined that Plaintiffs have properly alleged MMC's fiduciary status with respect to Count I, and thus need not address MMC's non-fiduciary liability, the facial invalidity of Count V compels the Court to dismiss it at this time.

Specifically, regardless of whether the breach of fiduciary duty claims alleged here may be pursued against a non-fiduciary, and it seems unlikely that the alleged breaches fall within the narrow scope of the section 406(a) party-in-interest transactions considered in Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238 (2000), the Supreme Court has clearly stated that any ERISA claims brought against non-fiduciaries would be limited to appropriate equitable relief.

Id. at 246. Accordingly, as the relief that Plaintiffs request is simply legal damages in the guise of equitable relief, see supra Part II.C, Plaintiffs would be unable to obtain the relief sought by Count V, and thus this claim must be dismissed.

**III. CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. Specifically, all counts are dismissed to the extent that they seek monetary relief under section 502(a)(3), and the knowing participation claim is dismissed against MMC in its capacity as a non-fiduciary. In all other respects, the motions to dismiss are denied.

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          December 14, 2006

21